# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　Plaintiff,<br><br>DELFINA OCHOA, MARIBEL OCHOA, JOSE OCHOA, AND GUADALUPE MARTINEZ,<br><br>　　　　Plaintiffs-In-Intervention,<br><br>　　v.<br><br>GIUMARRA VINEYARDS CORPORATION,<br><br>　　　　Defendant.<br>_____ / | CASE NO. 1:09-cv-02255-AWI-MJS<br><br>ORDER DENYING PLAINTIFF-INTERVENORS' DEMAND FOR DISCOVERY OF FINANCIAL INFORMATION |

**I.   INTRODUCTION**

This action was initiated December 29, 2009, by Plaintiff, the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging Defendant engaged in unlawful employment practices directed against individuals now named as Plaintiff Intervenors. The unlawful acts were claimed to consist of toleration of a hostile work environment arising out of alleged sexual harassment of one Intervenor by a co-worker and the retaliation, by summary termination of employment, against all Intervenors for complaining about the unlawful actions. The complaint sought recovery of lost wages, general compensatory damages, punitive damages and other equitable and injunctive relief. Intervenors added supplemental state law discrimination and retaliation claims.

Defendant denies the claims and specifically denies that any of the Intervenors were harassed, complained of harassment or were terminated for complaining of harassment. Defendant claims Intervenors voluntarily terminated their own employment after approximately thirteen days on the job.

EEOC and Defendant have reached an agreement to settle the former's claims. The terms are being finalized. Intervenors pursue their claim for damages.

The case originally faced a June 30, 2011, discovery deadline and an August 19, 2011, deadline for filing non-dispositive motions. Trial was set to begin on November 15, 2011. Later, the discovery deadline was extended to September 30, 2011, and trial was set for January 31, 2012. Then, following retirement of the District Judge to whom the case had been assigned, discovery was continued until December 30, 2011 and trial is now set for June 12, 2012.

The matter is before the Court at this time in response to Intervenor's request for an order directing Defendant to produce records and deposition testimony relating to Defendant's financial status. This issue was first presented to the Court in a request for a telephone conference; such a conference is a prerequisite to filing a discovery motion before the undersigned. During the November 15, 2011 conference and by follow-up minute order (ECF No. 56), the parties were directed to provide further briefing on the issue. A continued informal conference was convened December 14, 2011, at which time, after hearing further argument from the parties, the Court announced its intended decision consistent with the following.

The Court now issues its order without formal hearing, the matter being deemed submitted based on the briefing and informal conferences discussed above and in accordance with Local Rule 230(g) and Fed. R. Civ. P. 78.

**II.     ISSUE PRESENTED**

The issue before the undersigned is whether Defendant should be compelled at this time to produce, in connection with Intervenor's punitive damage claim, evidence relating to Defendant's final status.

### III. **APPLICABLE LAW**

Fed. R. Civ. P. 26(b)(1) gives each party in federal litigation the right to discover "any non-privileged matter that is relevant to any party's claim or defense".

A valid claim for punitive damages generally puts defendant's financial worth at issue and makes it admissible at trial for consideration in determining an amount of the punitive damages to be awarded. City of Newport v. Fact Concerts, Inc., 453 U.S. 247 267 (1981). Since net worth is relevant to the issue of punitive damages, it is discoverable in a proper case. As Intervenors note, the question here, and generally, is **when** such information is to be disclosed. Id.

Applicable law on this issue in this circuit is clearly unclear: The Ninth Circuit has not yet issued a decision signifying whether it will follow that line of cases holdings that a defendant's financial condition is discoverable in advance of trial whenever punitive damages are properly pled, or that line which holds that plaintiff must make a prima facie showing of entitlement to such damages. See EEOC v. California Psychiatric Transitions, 258 F.R.D. 391, 394-395 (E.D. Cal. 2009) (citing U.S. v. Matusoff Rental Co., 204 F.R.D. 396, 399 (W.D. Ohio 2001); EEOC v Klockner H & K Machines, 168 F.R.D 233, 235-236 (E.D. Wis. 1996); and EEOC v. Staffing Network, 2002 WL 311473840 at *3-4 (N.D. Ill. Nov. 4, 2002) as representative of the former and to Roberts v. Shawnee Mission Ford., Inc., 2002 WL 1162438 at *2-3 (D. Kan. Feb 7, 2002) and Vivino v. Everlast Sporting Goods Mfg. Co., Inc., 1987 WL 17571 (E.D. Pa. Sept. 28, 1987) as to the latter view.

This Court is not prepared to declare one or the other of the above rules supreme. However, in this case, and this case alone, the Court feels it would be abdicating its responsibility were it to order disclosure of financial information **at this time** given the considerations discussed with the parties and, briefly, below.

### IV. **ANALYSIS**

Intervenors' pleading alleges facts which, if allowed to go to the jury and believed by the jury, could support an award of punitive damages. Intervenors have prayed for recovery of such damages. (ECF No. 19) However, Defendant counters with denials and sufficient

-3-

questions about the credibility of the claims as to render it conceivable that the trial judge could foreclose consideration of punitive damages.

Intervenors' claim, in essence, that an employee of Defendant and a co-worker of Intervenors subjected one Intervenor, a seventeen year old female, to crude, graphic and outrageous sexual harassment and that, when Intervenors complained about such behavior, they were terminated and forced to forfeit their housing without notice because of the complaints and because of their status as indigenous Mexicans. Intervenors contend that Defendant showed reckless indifference to the harassment and discrimination.

Defendant responds by denying that Intervenors were harassed or terminated. Rather, Defendant claims the Intervenors terminated their employment voluntarily following a dispute with a non-supervisory co-worker about the quality of their work. Defendant maintains that at no time prior to their quitting did any of the Intervenors ever complain to anyone about any harassment or discrimination of any kind. Defendant alleges several striking inconsistencies in the claims and memories of the Intervenors and asserts that their claims reflect facts diametrically opposed to those of percipient witnesses. Defendants also note that Intervenors were employed by Defendant for only thirteen days some four years ago. Significantly, Intervenors do not seek damages for lost wages or emotional distress beyond the "garden variety" distress that may accompany any wrong.

Obviously, the Court can not resolve these discrepant claims at this point. Indeed, Intervenors note, correctly, that hey have no obligation even under the more stringent view to prove their entitlement to punitive damages at this stage of the proceedings; they need only present sufficient facts to show the prayer is not merely a pretext for unwarranted discovery of financial materials. <u>Chenoweth v. Schaaf,</u> 98 F.R.D. 587, 589 (W.D. Pa. 1983).

In this latter respect, the Court inquired of Intervenors as to why they sought such financial information at this particular stage of the proceedings, two years into the case, two previously-set discovery deadlines dates having passed, and still more than six months pre-trial; the Court asked if the Intervenors would be prejudiced if the discovery request were not acted on until closer to trial. Intervenors' responded that they sought the information to

assist in the settlement process.

The parties, the Court, and the public have an interest in promoting early, agreed-upon resolution of cases through negotiation and settlement. See Ressler v. Jacobson, 822 F.Supp. 1551, 1554-55 (M.D. Fla. 1992). Discovery of discoverable information for use in promoting compromise and settlement is legitimate and often productive.  However, the Court is unable to conclude that that goal, the only one identified by Intevenors, has any role here, for the following reasons.

First, the facts presented - the short duration of Intervenors' employment, the resulting short duration of the alleged harassment and discrimination, the absence of economic or emotional distress damages, and the potential challenges to Intervenors' credibility - all militate against the likelihood of a substantial general damages award. Punitive damages, if awarded, must meet a ratio of something less than ten to one relative to actual damages.  BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996).

Second, apparently all parties recognize and agree that Defendant is a very large and successful farming enterprise, not capable of credibly resisting settlement by claiming an award could not be collected.  Indeed, defense counsel made it clear that Defendant had not used and had no intention of using any sort of non-collectability strategy in negotiation, acknowledging affirmatively his belief that Defendant was fully capable of satisfying even a seven figure judgment.

Third, the scope of the requested information is quite broad.  Intervenors requested information as to all of Defendant's assets, liabilities, expenses, loans, loan payments, debts, taxes, income and bank accounts during the period from 2007 to the present.

Finally, it appears that one of the counsel for Intervenors in this case is counsel for other Plaintiffs in similar actions.  According to defense counsel, these other clients are seeking information about Defendant's finances and business operations.

Considering all of the foregoing, the Court is not prepared to conclude that Intervenors necessarily have shown the existence of a valid claim justifying the discovery

of Defendant's financial information at this time or that the information sought is not sought for pretextual purposes. (As to this latter point, the Court does not suggest an unethical motive. As noted, information as to a Defendant's ability to satisfy a judgment can facilitate settlement negotiations. However, here there does not seem to be any real question as to Defendant's ability in that regard. Although avoidance of having to disclose confidential financial information might in and of itself be an inducement to settle, use of that inducement would have scent of impropriety about it.)

## V. CONCLUSION

Accordingly, the Court DENIES the request for an order compelling Defendant's production of financial information at this time, but it does so without prejudice to Intervenors' right to renew the request at the time of and in connection with the trial confirmation hearing. The parties and the trial judge will be in a better position to determine at that time the propriety and timing of such discovery and still give Intervenors ample opportunity prior to trial to review and digest the information, if any is ordered disclosed.

To facilitate the process, The Court ORDERS further that Defendant assemble, and be prepared to present at the time of the pre-trial conference, such categories of financial information for such time periods as the parties shall hereafter agree are relevant and necessary to a determination of an amount of punitive damages to be awarded if the trial judge allows, and the jury awards, such damages. (The Court believes the scope of the current request is overly broad and goes beyond what would be necessary to educate Intervenors and the jury appropriately in determining an award. The Court is confident that the parties can come to agreement on a more reasonable scope. If they fail, they may seek direction from the Court.)

IT IS SO ORDERED.

Dated:   February 6, 2012         /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE